UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*******************************
DANIEL P. WARD,                *
                               *
         Plaintiff             *
                               *
v.                             *  C.A. NO. 03-12281-RCL
                               *
VERIZON CORPORATION and        *
MICHAEL B. SHEA,               *
                               *
         Defendants            *
*******************************
```

FILED
IN CLERKS OFFICE

2005 FEB 22  P 3: 10

U.S. DISTRICT COURT
DISTRICT OF MASS.

### PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN SUPPORT OF HIS CONTENTION THAT THERE IS A GENUINE ISSUE TO BE TRIED

Pursuant to Local Rule 56.1, plaintiff submits the following additional material facts in support of his contention that there is a genuine issue to be tried.

### I. Rebuttal of Defendant's Statement of Facts[1]

1-3, 6. In 1999 plaintiff was promoted to the position of local manager, first level, notwithstanding any alleged performance deficiencies. He was told at the time of his promotion by the hiring manager, George Lees, that his prior disciplinary record was not a factor in the consideration of his promotion, because the discipline was long ago, his accomplishments were significant and Lees was aware that some of discipline was the result of a personality conflict. Dennis Law, Ward's former manager, responsible for much of the discipline, was fired around the time of plaintiff's promotion (Ward affidavit, paragraph 2).

4-5. Plaintiff's overall ratings on both occasions were EM, Exceeds/Meets objective. He was given raises and a bonus on the occasion of each review (Ward affidavit, paragraph 3).

---

[1] These paragraph numbers parallel the paragraph numbers used by defendants in their statement.

10. Mr. Shea at the time of the review had not had an adequate chance to assess Ward's performance. Plaintiff had been out several months due to an ankle operation. Shea gave Ward the mid-year review right after he returned from work, not waiting until he supervised Ward for 6 months (Ward affidavit, paragraph 4).

16. Mr. McGovern told plaintiff that he agreed with Ward that Mr. Shea's criticisms of plaintiff were unfounded and not fair, but McGovern said he could not find conclusive evidence that Shea's treatment of Ward was racially motivated (Ward affidavit, paragraph 5).

21. Approximately 3:15 on that date, plaintiff was called by Patti Comoletti, Shea's secretary, who told Ward that Mr. Shea wanted to meet with him. She did not identify the location where plaintiff was supposed to go to or tell him that Shea wanted to see Ward immediately. Ward assumed Shea wanted to see him at the office in Dorchester. Plaintiff told her he would finish the job he was on and go see Shea. Shea later called Ward about 4:00 p.m., as Ward was about to get on the subway, and told him to come immediately. Shea didn't say he was in Braintree. Ward went to the Dorchester office and Shea was not there (Ward affidavit, paragraph 6).

22. The documents, which speak for themselves, do not say what defendants claim then to say.

26. On the first day plaintiff was out sick with his severe migraines (February 20), he spoke to Mr. Shea and told him he was having severe headaches, he had contacted the ARC, and that he was going to see his doctor. Shea told Ward to keep him apprised of his medical situation and plaintniff said he would. Subsequent to that conversation, plaintiff spoke to Shea 3-4 more times and told him he was under his doctor's care, and did not know when he would be back to work. Other times Shea called Ward and plaintiff returned his calls and left him voicemail

messages as to his situation. Ward was not living at 55 Weybosset Street at the time and he had informed Shea that he was staying somewhere else. Ward never broke off conversations when Shea called him on his cell phone. At all times Ward made a continuous effort to inform Mr. Shea of his medical situation (Ward affidavit, paragraph 7).

27-28. Plaintiff did not receive the letter (because he wasn't staying at Weybosset Street) until Sunday, the day before he was supposed to call. Ward called Mr. Shea that Monday morning and left a detailed message on Shea's voicemail, telling him, Ward was still out sick and under the doctor's care and was still going for tests. Mr. Shea never returned the call (Ward affidavit, paragraph 8).

## II. Additional Material Facts

1. Shea had no role in promoting plaintiff, he inherited plaintiff in 2001 when he became plaintiff's area manager (Shea deposition, page 11).

2. Plaintiff was the only African-American manager reporting to Shea (Shea deposition, pages 12-13).

3. Shea became aware of plaintiff's discrimination complaint which plaintiff filed with defendant's EEO office against Shea in May, 2002 (Shea deposition, pages 26-27, 29-31).

4. Shea suspended plaintiff for not appearing in Braintree at the date in question in November, 2002, even though plaintiff had only a hour's notice of the mandatory meeting (Shea deposition, pages 39-40). Shea could not explain why he only gave Ward one hour's notice (Shea deposition, page 47). Shea never ordered anyone of his other managers to a meeting with one hour's notice (Shea deposition, page 53).

5. Shea claims plaintiff was discharged for abandoning his job. He claims plaintiff never called him and told him of his whereabouts or that he was sick. Shea learned from the ARC (a "vendor", or subcontractor), that plaintiff called in sick, but claims plaintiff failed to call him also, which he was required to do (Shea deposition, pages 61-65, 75-76). Shea admits that he once spoke to plaintiff during his absence period (February 20 – March 10), but that plaintiff made no other attempts to contact him (Shea deposition, pages 65-67). Shea denied that plaintiff left any messages for him (Shea deposition, pages 74).

6. Shea then falsely told HR that plaintiff had failed to contact him and as a result plaintiff was terminated for job abandonment. If plaintiff had contacted Shea (which plaintiff insists that he did), told him he was suffering from migraines and was in the process of applying for FMLA leave, plaintiff would not have been discharged. He was discharged only for his persistent failure to contact Shea during his absence period (She deposition, pages 76, 78, 84-85, O'Leary deposition, pages 16-17, 21-24, Reed deposition, pages 25-26, 30-31).

7. Plaintiff was granted FMLA leave by the ARC (Absence Reporting Center). Verizon had no safeguards at the applicable time to ensure that an employee seeking FMLA leave would not be terminated before the leave was approved. The ARC sends out FMLA documents to any employee reporting an absence due to serious illness. The employee is not required to request FMLA leave, expressly (Shea deposition, pages 89-92).

Daniel P. Ward
By his attorney,

Date: 2-18-05

Paul A. Manoff
47 Winter Street, #4
Boston, MA 02108
(617) 542-4620
BB0# 318220

-4-

-5-

## CERTIFICATE OF SERVICE

I, Paul A. Manoff, hereby certify that on February 18, 2005 I served a copy of the above document on the defendants by mailing a copy, first class, postage prepaid to Arthur G. Telegen, Foley Hoag LLP, 155 Seaport Blvd., Boston, MA 02210-2600.

                                                                           Paul A. Manoff

ward\statfact