UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL P. WARD,<br><br>    Plaintiff,<br><br>v.<br><br>VERIZON CORPORATION and<br>MICHAEL B. SHEA,<br><br>    Defendants. | CIVIL ACTION NO. 03-12281-RCL |

### [PROPOSED] REPLY MEMORANDUM IN SUPPORT
### OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Verizon New England Inc. ("Verizon") and Michael B. Shea ("Shea") hereby submit this reply memorandum in support of their motion for summary judgment.

### ARGUMENT

I. **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON WARD'S CLAIM OF RETALIATION UNDER CHAPTER 151B BECAUSE DEFENDANTS TOOK ADVERSE EMPLOYMENT ACTIONS AGAINST WARD BEFORE HE ENGAGED IN PROTECTED ACTIVITY.**

In his Opposition, Plaintiff Daniel P. Ward ("Ward") argues that, on March 12, 2003, Verizon discharged his employment based on allegedly false information provided by Shea to Verizon's Human Resources department and Shea's manager, John Reed. Opp. at 1. Specifically, Ward argues that "Shea lied to HR and his manager, John Reed, falsely telling them that plaintiff made no effort to apprise him of his situation, and did not keep in contact with him" and that Shea "would have no motive to blatantly lie about such matters, absent the fact that plaintiff had filed a complaint against him 9 months before." Opp. at 3. Ward's attempt to establish a nexus between Shea's alleged lies in February and March 2003 and Ward's May 2002

B3005243.1

internal complaint of race discrimination not only fails because of the time span between the events, but also due to the fact that Shea (and Verizon) took adverse employment actions against Ward *before* he made his internal complaint.

Ward filed his May 2002 internal complaint of race discrimination *because* Shea took adverse employment actions against him which he deemed unwarranted. Specifically, Ward filed his internal complaint in response to the following (amongst other allegedly unwarranted acts): (1) a mid-2001 review issued to him by Shea that "had all these negative things in there, very negative stuff"; (2) a March 13, 2002 review which rated Ward as "Improvement Needed" in three out of four categories: Customer Focus, Leadership Focus and Results Focus; and (3) a May 23, 2002 meeting in which Shea allegedly informed Ward that he was Shea's "poorest performer last year" and concluded by saying, "You suck; you're lucky to have a job." Defendants' Local Rule 56.1 Statement at ¶¶ 10, 13-15.

"Where, as here, adverse employment actions or other problems with an employee predate any knowledge that the employee has engaged in protected activity, it is not permissible to draw the inference that subsequent adverse actions, taken after the employer acquires such knowledge, are motivated by retaliation." Mole v. Univ. of Mass., 814 N.E.2d 329, 340 (Mass. 2004). In Mole, the undisputed evidence established that the plaintiff's problems at work with the supervisors he identified as retaliating against him emerged prior to his protected activity of supporting his wife's sexual harassment claim against a department head. 814 N.E.2d at 339-40. Coupled with the lack of close temporal proximity between the protected activity and the adverse employment actions, the SJC held that the defendants were entitled to a directed verdict in their favor on plaintiff's Chapter 151B retaliation claim. See also Mesnick v. General Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) (where some problems predated protected activity, and discharge

occurred nine months after protected activity, sequence suggests absence of causal link; summary judgment entered in favor of employer).  Here, the same factors support granting summary judgment in favor of Defendants.  Not only did adverse employment actions against Ward by Defendants precede his internal complaint of race discrimination, but his discharge -- the only timely act about which Ward complains -- occurred more than nine months following his internal complaint.[1]  Summary judgment should be entered in favor of Verizon and Shea on Ward's claim of retaliation under Chapter 151B.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON WARD'S FMLA CLAIM

### A. Defendants are Entitled to Summary Judgment on Ward's FMLA Claim Because He Did Not Provide Sufficient Notice of His Serious Health Condition Prior to His Termination.

Ward claims in his Opposition that there is no basis for Defendants' argument that he did not give appropriate notice of his FMLA claim because the witnesses all testified that Ward had been terminated solely for failing to communicate with Shea.  Opp. at 4.  Ward misconstrues Defendants' argument.  Defendants do not claim that Ward was discharged *because* he failed to give appropriate notice of his FMLA-protected status.  Rather, Defendants argue that that they could not possibly have discriminated or retaliated against Ward in violation of the FMLA because they did not have actual or inquiry notice, prior to his termination, that Ward suffered from an FMLA-protected serious health condition.

---

[1] In response to the argument in Defendants' principal memorandum that the nine and one-half month time span between Ward's protected activity and his termination is too long to infer a nexus, Ward has sought to rely upon various time-barred events between June and November 2002 as "evidence" that his termination was retaliatory (including his placement on a Performance Improvement Plan in July 2002 and his suspension for insubordination in November 2002).  Opp. at 2.  As in Mole, however, any inference of retaliation that may have arisen from the timing of these events is undercut by the fact that Defendants took adverse employment actions against Ward before he engaged in protected activity.  814 N.E.2d at 340.

To trigger an employer's duties under the FMLA, an employee suffering from an FMLA-protected serious health condition must provide the employer with adequate and timely notice of his status. See Carter v. Ford Motor Co., 121 F.3d 1146, 1148-49 (8th Cir. 1997). "Only when the employer is properly put on notice that a particular absence may be FMLA-protected does the employer's interest in preventing or disciplining absenteeism yield to the employee's interest in taking protected leave." Lukacinsky v. Panasonic Serv. Co., No. Civ. A. 03-40141 FDS, 2004 WL 1915347, at *5 n.7 (D. Mass. Nov. 29, 2004). In other words, if an employee's notice is insufficient to put an employer on notice that he *may* be suffering from a serious health condition, the courts -- absent evidence to the contrary -- will infer that the employer "did not know" that the employee is FMLA-leave eligible and/or intending to invoke the protections of the FMLA, and, therefore, could not commit an act of FMLA discrimination or retaliation against that employee. See id. Here, Ward alleges that (1) he informed Shea on February 20, 2003 that he was having severe headaches, he had called Verizon's Absence Reporting Center ("ARC"), and that he was going to see his doctor; (2) he told Shea on 3 or 4 later occasions that he was under his doctor's care and did not know when he would return to work; and (3) he left a message on Shea's voicemail on Monday, March 10, 2003 that he was still out sick, under his doctor's care, and going for testing.[2] Ward Aff., ¶¶ 7-8. Neither Ward's report to the ARC, nor his alleged telephone calls to Shea, put (or should have put) Defendants on notice that he suffered from a FMLA-protected serious health condition or that he intended to invoke the protections of the FMLA. See, e.g., Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 980 (5th

---

[2] On March 11, 2003, the ARC issued to Ward an FMLA Certification Form which he signed on March 12, 2003 (and submitted to the ARC no earlier than March 12, 2003, the day of his termination). Kurtz Aff., Ex. 29. The fact that the ARC issued an FMLA Certification Form to Ward does not support Ward's claims because the ARC issues FMLA forms to *any* employee reporting *any* health-related absence. Defendants' Rule 56.1 Statement at ¶ 23. Moreover, there is no evidence that the decisionmakers knew that Ward had -- or even intended to -- submit a FMLA Certification Form prior to deciding to terminate him.

Cir. 1998) (summary judgment affirmed where notice to employer that employee "was having a lot of pain in her side" and that she was "sick" was insufficient as a matter of law to establish notice of a serious health condition requiring exigent leave); Gay v. Gilman Paper Co., 125 F.3d 1431 (11th Cir. 1997) (summary judgment affirmed where employee suffered nervous breakdown and husband's notice to employer that she was in the hospital "having some tests run" inadequate as a matter of law to put employer on notice that employee may be suffering from a serious health condition requiring exigent leave); Carter, 121 F.3d at 1148 (inadequate notice under FMLA where plaintiff's wife informed employer that she was sick and that plaintiff "would be out for awhile" and later plaintiff informed employer that he would be out and did not know when he would return). Because neither Verizon nor Shea had actual or inquiry knowledge of Ward's serious health condition or intent to invoke the FMLA until after he had been terminated, Ward cannot make out a *prima facie* case of FMLA discrimination or retaliation.

> **B. Defendants are Entitled to Summary Judgment on Ward's FMLA Retaliation Claim Because Defendants Took Adverse Employment Actions Against Ward Prior to His Headache-Related Absences.**

In his opposition, Ward did not refute Verizon's legitimate, nondiscriminatory reason for its decision to terminate Ward -- namely, its good faith belief that Ward failed to report to Shea regarding his medical status in March 2003.[3] Instead, Ward's FMLA discrimination and retaliation claims are based on his underlying claim that (1) he did, in fact, keep Shea apprised of his medical situation; (2) in retaliation for Ward seeking FMLA leave, Shea lied to his manager and Human Resources by claiming that Ward did not keep him apprised of his medical situation; and (3) Shea's lies ultimately resulted in Ward's termination (and thus the loss of FMLA leave to which he was legally entitled). Ward's claims lack legal and factual support.

---

[3] For this reason alone, Ward's "FMLA discrimination claim" that "he sought FMLA leave and was denied it without legal justification" fails as a matter of law. See Respondents' Principal Memorandum at 19-20.

When evaluating a claim of retaliation under the FMLA, courts apply the same tests used to evaluate retaliation claims brought under Title VII and other civil rights statutes. See, e.g., King v. Preferred Technical Group, 166 F.3d 887, 891-92 (7th Cir. 1999) ("We find no reason to treat an intent-based FMLA claim . . . any differently than other retaliatory discharge cases.") Here, as discussed above with respect to Ward's Chapter 151B retaliation claim, Shea took adverse employment actions against Ward nearly two *years* prior to Ward's February/March 2003 headache-related absences. Applying the SJC's decision in Mole, as well as the First Circuit's decision in Mesnick, it is impermissible to infer -- based on the sequence of events -- that Shea's actions were triggered by Ward's FMLA-protected activity or status. Indeed, Ward concedes in his Opposition that Shea's alleged lies were not triggered by Ward's FMLA status, instead arguing that the "lies" were made in retaliation for his internal complaint of race discrimination. Summary judgment should therefore be entered in favor of Verizon and Shea on Ward's FMLA claims.

## **CONCLUSION**

For the foregoing reasons, and the reasons set forth in their principal memorandum, Verizon and Shea respectfully request that this Court grant their Motion for Summary Judgment.

Respectfully submitted,

**VERIZON NEW ENGLAND INC.** and
**MICHAEL B. SHEA**

By their attorneys,

_____
Arthur G. Telegen (BBO # 494140)
David C. Kurtz (BBO # 641380)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: _____ __, 2005