UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL P. WARD,             ) | |
|             ) | |
|    Plaintiff,        ) | |
|             ) | |
| v.                ) | CIVIL ACTION NO. 03-12281-RCL |
|             ) | |
| VERIZON CORPORATION and   ) | |
| MICHAEL B. SHEA,      ) | |
|             ) | |
|    Defendants.      ) | |

**VERIZON NEW ENGLAND, INC.'S PRE-TRIAL MEMORANDUM**

In accordance with Fed. R. Civ. P. 16(d), L.R. 16.5 and this Court's Order for

Final Pre-Trial Conference, Defendant Verizon New England, Inc. ("Verizon") hereby

submits this Pretrial Memorandum.

**I.      Concise Summary of Defendant's Position With Respect to Both Liability
and Relief Sought**

**A.      Liability**

The only claim left in this case is that Verizon terminated Ward not for failing to

keep his manager informed of his whereabouts, but in retaliation for his filing of a claim

under the Family and Medical Leave Act ("FMLA").  Ward's claim must fail for several

independent reasons.

First, the evidence will show that Ward cannot claim the protections of the FMLA

because he did not, prior to his March 12, 2003 termination, give adequate and timely

notice to Verizon and/or his supervisor, Michael Shea ("Shea"), that he may be suffering from a serious health condition entitling him to leave under the FMLA.

Second, the evidence will show that, regardless of whether Ward gave adequate and timely notice to Verizon and/or Shea that he may be suffering from a FMLA-defined serious health condition, Verizon nonetheless terminated his employment for a legitimate, non-discriminatory reason -- namely, his failure to keep his supervisor informed of his status during the course of his February-March 2003 absence. The parties have agreed that Verizon retained the right to discharge Ward if he did not keep in contact with Shea during the course of his absence. Not only will Verizon's witnesses testify as to this reporting requirement, but Ward himself has acknowledged that he had an obligation to keep Shea informed of his whereabouts. O'Leary Dep. at 16; Reed Dep. at 24-25; Ward Dep. at 160. Likewise, the Department of Labor regulations accompanying the FMLA make clear that an employer may require employees on FMLA leave to report periodically as to their status. 29 C.F.R. 825.309(a).

Third, even if Ward could establish that he did, in fact, keep Shea adequately aware of his whereabouts during the course of his February-March 2003 absence, he would nonetheless have the burden of proof of establishing that Shea would not have lied to Verizon but for an intent to retaliate against Ward for his (potential) FMLA-protected status. As a preliminary matter, Verizon will establish that Shea did not know about the extent of Ward's alleged medical condition or that Ward intended to invoke the FMLA, thus making it impossible for him to retaliate on those bases. Even if Shea did know about Ward's FMLA status, Verizon will establish that Shea's statements to Verizon were motivated by an honestly held belief -- *even if incorrect* --  that Ward had not

properly reported to him.  However, even if Ward could establish that Shea knew about

Ward's FMLA status <u>and</u> lied to Verizon about Ward's level of contact, Ward

nonetheless will be charged with the duty of showing by a preponderance of the evidence

that Shea's lies were motivated by Ward's FMLA status, and not some unrelated factor

(*e.g.,* personal dislike or anger over Ward's performance).   Verizon contends that Ward

simply cannot meet this burden.

### B.    <u>Damages</u>

Even if Ward were to show that Verizon is liable under the FMLA, his damages --

at best -- would be extremely limited.  Under the FMLA, only actual damages are

recoverable and are strictly defined and measured by actual monetary loss.  Here, the

evidence will show that Verizon would have terminated Ward for performance reasons

(namely, his failure to comply with a Performance Improvement Plan) in or about

February 2003, even if he had not abandoned his job.  Therefore, Ward's entitlement to

actual damages, if any, should be cut off as of the date the jury finds he would have been

terminated by Verizon for that non-discriminatory reason.  Likewise, he should not be

entitled to any equitable relief, such as reinstatement or front pay, because he would have

been terminated by Verizon for non-discriminatory reasons before the date of the jury's

verdict.

To the extent the jury finds that Ward is entitled to any actual damages, Verizon

will be able to establish by a preponderance of the evidence that he failed to mitigate his

damages, thus reducing the amount of any back pay award to which he might be entitled.

Finally, Verizon will establish that it acted in good faith and had reasonable grounds for terminating Ward by relying upon Shea's statements, thus reducing or eliminating his entitlement, if any, to liquidated damages.

## II.     Statement of Waived Defenses

Defendants do not anticipate pursuing at trial the following defenses from their November 23, 2003 Answer:

> 1.     First Defense ("The Complaint fails to state a claim upon which relief can be granted"); and
>
> 2.     Sixth Defense ("Plaintiff is estopped from asserting his claims").

## III.    Stipulated Facts

1.     Ward was employed by Verizon (and/or its predecessors) from 1982 to 2003.

2.     Ward's last position with Verizon was as a Manager in the Special Services Group.

3.     In that position, he reported to Shea.

4.     Ward was terminated on or about March 12, 2003.

## IV.    Contested Issues of Fact

1.     Whether Ward gave adequate and timely notice to Verizon and/or Shea, prior to his termination, that he may be suffering from a serious health condition entitling him to leave under the Family and Medical Leave Act (FMLA).

2.     Whether Ward reported adequately to his supervisor, Michael Shea, as to his status and intent to return to work during the course of his late February through mid-March 2003 absence from work.

3.     Whether Shea knowingly lied to his supervisor and Human Resources about the level of Ward's contact with him during the course of Ward's late February through mid-March 2003 absence from work in retaliation for Ward's attempt to exercise rights under the FMLA and/or in an attempt to deprive Ward from rights to which he might be entitled under the FMLA.

4.     Whether Verizon would have terminated Ward at some point prior to the date of trial, even if Shea had reported that Ward had kept in contact with him during the course of his late February through mid-March 2003 absence from work, based on his alleged failure to comply with the terms of a Performance Improvement Plan.

5.     Whether Ward mitigated his damages (if any).

6.     Whether the ultimate decisionmakers at Verizon, discharged Ward, because they honestly and reasonably believed, based on Shea's assurances, that Ward had failed to keep in contact with Shea during the course of Ward's late-February to mid-March 2003 absence.

## V.     <u>Questions Raised by Pending Motions</u>

None.

## VI.     <u>Contested Issues of Law</u>

### A.     <u>FMLA Notice Requirement</u>

To trigger an employer's duties under the FMLA, an employee suffering from an FMLA-protected serious health condition must provide the employer with adequate and timely notice of his status.  See <u>Carter v. Ford Motor Co.</u>, 121 F.3d 1146, 1148-49 (8th Cir. 1997); <u>see also</u> 29 U.S.C. § 2612 (e)(2).   While the employee need not expressly assert rights under the FMLA, or even mention the FMLA, adequate notice requires more

than a mere profession of "sickness" or "illness." See, e.g., Brock v. United Grinding

Techs., Inc., 257 F. Supp. 2d 1089, 1100-01 (S.D. Ohio 2003) ("[t]o interpret the FMLA

in such a way that an employer must investigate an employee's leave whenever it is

informed that the employee is "ill" or "sick" would certainly create a burden on the

employer that Congress did not intend"); Carter, 121 F.3d at 1148 (inadequate notice

under FMLA where plaintiff's wife informed employer that she was sick and that

plaintiff "would be out for awhile" and later plaintiff informed employer that he would be

out and did not know when he would return).  In other words, if an employee's notice is

insufficient to put an employer on notice that he *may* be suffering from a serious health

condition, the fact finder -- absent evidence to the contrary -- may infer that the employer

"did not know" that the employee is FMLA-leave eligible and/or intending to invoke the

protections of the FMLA, and, therefore, could not commit an act of FMLA

discrimination or retaliation against that employee.  See id.

　　　　Here, Ward alleges that (1) he informed Shea on February 20, 2003 that he was

having severe headaches, he had called Verizon's Absence Reporting Center ("ARC"),

and that he was going to see his doctor; (2) he told Shea on 3 or 4 later occasions that he

was under his doctor's care and did not know when he would return to work; and (3) he

left a message on Shea's voicemail on Monday, March 10, 2003 that he was still out sick,

under his doctor's care, and going for testing.[1]  It is a question of law whether Ward's

report to the ARC, or his alleged telephone calls to Shea, put (or should have put)

---

[1] On March 11, 2003, the ARC issued to Ward an FMLA Certification Form which he signed on March 12, 2003 (and submitted to the ARC no earlier than March 12, 2003, the day of his termination).  The fact that the ARC issued an FMLA Certification Form to Ward does not support Ward's claims because the ARC issues FMLA forms to *any* employee reporting *any* health-related absence.  Moreover, there is no evidence that the decisionmakers knew that Ward had -- or even intended to -- submit a FMLA Certification Form prior to deciding to terminate him.

- 6 -

Defendants on notice -- as a matter of law --  that he suffered from a FMLA-protected serious health condition or that he intended to invoke the protections of the FMLA.

**B.**     **Evidentiary Questions**

Ward's original Complaint brought claims of race discrimination and retaliation under Chapter 151B of the Massachusetts General Laws.  Ward voluntarily dismissed his race discrimination claim and the Court granted summary judgment to Defendants on his Chapter 151B retaliation claim (which claimed that Defendants retaliated against him on the basis of his having complained of race discrimination).  For that reason, Ward should not be able to introduce any evidence of race discrimination or retaliation.

Verizon will establish that Ward was placed on a Performance Improvement Plan ("PIP") due to poor performance and that he did not improve his performance as of the end of his employment.  Verizon will also establish that Ward would have been terminated based on his failure to improve in accordance with the PIP (and, thus, his damages should be cut off as of the day he would have been terminated.  It does not appear that Ward will challenge the authenticity of the PIP (or other business records discussing his performance thereunder).  However, Ward has signaled his intent to question not only whether the PIP was warranted, but also the veracity of any documents (such as e-mails) questioning his performance under the PIP.  Among the evidence Ward seeks to rely upon to support his position are documents in which Ward claims that Shea discriminated against him.  To the extent that the Court allows Ward to present evidence questioning his performance-related documents (including the PIP), Verizon should be entitled to defend itself by relying upon historical, pre-Shea performance documents showing that other supervisors similarly criticized Ward's performance.

**VII.**   **Requested Amendments to the Pleadings**

      Verizon does not request any amendments to the Pleadings.

**VIII.**   **Additional Matters**

      Verizon does not, at this time, seek to raise any additional matters to aid in the

disposition of the action.

**IX.**   **Probable Length of Trial**

      Verizon estimates that the trial will last approximately 3-4 half-days (from 9:00

AM to 1:00 PM).

**X.**   **Fact Witnesses**

    1.    Daniel Ward
         Plaintiff

    2.    Michael Shea
         Verizon
         65 Crescent Street, Floor 3
         Brockton, MA 02301

    3.    Mary O'Leary
         Verizon
         125 High Street, Room 1544
         Boston, MA 02120

    4.    Paul McGovern
         Verizon
         125 High Street
         Room 1544
         Boston, MA 02110

    5.    John Reed
         19 Parker River Drive
         Byfield, MA 01922

    6.    Thomas K. Brown
         11 Jennett Avenue
         West Roxbury, MA 02132

7.  Verizon Keeper of the Records
    (if necessary to establish authenticity of exhibits)

Verizon reserves the right to name additional witnesses with reasonable notice to Ward

## XI.  **Proposed Exhibits**

### A.  **Unopposed Exhibits**

1.  March 7, 2003 Letter from Michael B. Shea to Daniel Ward

2.  March 12, 2003 Letter from John E. Reed to Daniel Ward

3.  March 11, 2003 Letter from the Verizon Absence Reporting Center to Daniel P. Ward

4.  March 20, 2003 Letter from the Verizon Absence Reporting Center to Daniel P. Ward

5.  April 2, 2003 Letter from Daniel P. Ward to Verizon Absence Reporting Center (with attached FMLA Certification Forms completed by Daniel Ward and David H. Cahan, M.D.)

6.  May 9, 2003 Letter from the Verizon Absence Reporting Center to Daniel P. Ward

7.  Ward's financial records between March 12, 2003 and trial

8.  Documents related to Ward's job search

Verizon reserves the right to propose additional exhibits to Ward which fall into the categories of the documents listed above.

**B.**    <u>**Opposed Exhibits**</u>

Plaintiff Ward objects to the admission of each of the following proposed

exhibits.

<u>**Performance Documents Pre-Dating Ward's Employment Under Shea's**</u>
<u>**Supervision**</u>

    A.  March 1, 1991 Letter of Discipline from Dennis Law to Daniel Ward

    B.  March 1, 1992 Return to Work Letter from Dennis Law to Daniel

       Ward

    C.  May 24, 1991 Letter from Robert A. Walsh to Dennis Banks

    D.  August 6, 1991 Employee Contact Memo from Dennis Law to Daniel

       Ward

    E.  September 24, 1992 Return to Work Letter from Eugene Duffy to

       Daniel Ward

    F.  May 3, 1993 Letter of Discipline from Eugene Duffy to Daniel Ward

    G.  May 5, 1997 Memorandum re: Callbacks from William Schwartz to

       Daniel Ward

    H.  February 19, 1997 Quality Alert Memorandum from William

       Schwartz to Daniel Ward

    I.  March 28, 1997 Memorandum documenting productivity record

       discussion between William Schwartz and Daniel Ward

    J.  June 26, 1997 Memorandum recording verbal warning issued to

       Daniel Ward by William Schwartz

    K.  August 27, 1997 Letter of Warning from William Schwartz to Daniel

       Ward

L.   December 5, 1997 Return to Work Letter issued to Daniel Ward

M.   2000 Management Performance Appraisal of Daniel Ward

N.   2001 Daniel Ward Year-End Performance Assessment

**Documents Reflecting Ward's Performance Under Shea's Supervison**

O.   July 18, 2002 Counseling Discussion and Performance Improvement Plan issued to Daniel Ward by Michael Shea

P.   September 11, 2002 Performance Improvement Plan Progress Review Issued to Daniel Ward by Michael Shea

Q.   November 27, 2002 Letter of Suspension issued to Daniel Ward

R.   December 2, 2002 Performance Improvement Plan progress review issued to Daniel Ward by Michael Shea

S.   February 11, 2003 Email from Michael Shea to Daniel Ward

T.   2002-2003 Performance Tracking Memorandum re: Daniel Ward

U.   Verizon Performance Improvement Guidelines for Management Employees (April 2002)

V.   Multiple e-mails and other documents describing Ward's performance between July 2002 and February 2003 (Verizon will provide a separate list of these documents to Ward)

Verizon reserves the right to propose additional performance-related documents with reasonable notice to Ward.

C.   **Additional Exhibits/Categories of Exhibits**

The following are documents which Verizon has recently identified as potential exhibits.  Ward has not yet been provided with the opportunity to assent or object:

- 11 -

    1.       Employee's Absence Reporting/FMLA Information Guide

    2.       North Guidelines:  Attendance - New England

    3.       Documents related to mitigation of damages (such as publicly-available job advertisements and postings)

    4.       E-mails and other documents concerning Ward's February-March 2003 absence

Verizon reserves the right to propose additional exhibits with reasonable notice to Ward.

**XII.**    <u>**Proposed Jury Instructions**</u>

Verizon's proposed jury exhibits are attached as <u>Exhibit A</u> hereto.

**XIII.**    <u>**Proposed Voir Dire Questions**</u>

Verizon's proposed voir dire questions are attached as <u>Exhibit B</u> hereto

**XIV.**    <u>**Proposed Special Verdict Form**</u>

Verizon's proposed special verdict form is attached as <u>Exhibit C</u> hereto.

**VERIZON NEW ENGLAND INC.**

By its attorneys,

Arthur G. Telegen (BBO # 494140)
David C. Kurtz (BBO # 641380)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: October 21, 2005

<u>**CERTIFICATE OF SERVICE**</u>

On October 21, 2005, I, David C. Kurtz, hereby caused a copy of the above document to be served, via first class mail, upon Paul Manoff, Esq., counsel of record for Plaintiff Daniel P. Ward.

_____
David C. Kurtz

B3112958.1

EXHIBIT A

## PROPOSED JURY INSTRUCTIONS - EXHIBIT A

## PREPONDERANCE OF THE EVIDENCE

The burden is on the plaintiff in a civil action, such as this, to prove every essential element of his claim by a preponderance of the evidence.  If the proof should fail to establish any essential element of Mr. Ward's claim by a preponderance of the evidence, you should find for Verizon as to that claim.

To "establish by a preponderance of the evidence" means to prove that something is more likely to be so that not so.  In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared with that opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true.  This rule does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.


Authority:

Devitt and Blackmar, Federal Jury Practice and Instructions, § 72.01 (4th Ed.).

B3112863.1

## ALL PERSONS EQUAL BEFORE THE LAW – CORPORATIONS

Corporations, their management and employees, and all other persons stand equal before the law and must be dealt with as equals in a court of justice. A corporation, like Verizon, and its management, like Mr. Shea, are entitled to the same fair trial at your hands as you would give to Mr. Ward. This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations of life. To decide this case based upon any bias against corporations, or because you believe that Verizon could afford to pay, would violate your sworn obligations as jurors. In this case, as in any other, the Plaintiff is not entitled to recover money unless he establishes a legal right for such recovery under the standards that exist in the law.

Authority:

Basic Instruction 2.1, Pattern Jury Instructions - Civil Cases, U.S. Eleventh Circuit District Judges Association (1990); Devitt and Blackmar, Federal Jury Practice and Instructions, § 71.04 (4th Ed.)

## CREDIBILITY OF WITNESSES

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence to the contrary of the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while on the stand and any reason he may have for bias. Consider the witness' ability to observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.

You may, in short, accept or reject the testimony of any witness in whole or in part.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or non-existence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

Authority:

Devitt and Blackmar, <u>Federal Jury Practice and Instructions</u>, § 73.01 (4th Ed.).

## FMLA - NOTICE

As I told you at the start of the trial, this is a Family and Medical Leave Act ("FMLA") action brought by Daniel Ward against Verizon. The FMLA is a federal law that allows certain employees to take up to 12 weeks of unpaid leave within a twelve month period, for certain reasons. These reasons may include taking care of matters relating to the employee's own serious health condition.

The FMLA makes it unlawful for any employer to interfere with, restrain or deny the exercise of or the attempt to exercise, any right provided under the Act. In other words, the FMLA prohibits action by an employer to discriminate or retaliate against an employee for exercising rights created by the statute. In order to trigger that obligation, employees must provide their employers with "appropriate notice" of their intent to take FMLA leave or possible eligibility for such leave. An employee need not invoke the FMLA by name in order to put an employer on notice that the FMLA may have relevance to the employee's absence from work. Appropriate notice does, however, require that the employee provide enough information to put an employer on notice that he may be suffering from a serious health condition.

Verizon does not contest that Mr. Ward suffered from a serious health condition as defined by the FMLA. Verizon claims, however, that Mr. Ward did not provide appropriate notice to Verizon or his supervisor, prior to his termination, of the fact that he may be suffering from a serious health condition. It is your task to decide, weighing all the evidence, whether Mr. Ward provided Verizon with appropriate notice of his potential eligibility to take FMLA leave prior to his termination on March 12, 2003. If you find that Mr. Ward's notice was insufficient to put Verizon on notice that he *may* be suffering from a serious health condition, you must infer that the Verizon and his supervisor, Michael Shea, did not know that he was FMLA-leave

eligible or intending to invoke the protections of the FMLA, and, therefore, could not commit an act of FMLA discrimination or retaliation against him.  If so, you must render a verdict in favor of the Verizon.

Authority:

<u>Lukacinsky v. Panasonic Serv. Co.</u>, No. Civ. A. 03-40141 FDS, 2004 WL 2915347 (D. Mass. Nov. 29, 2004).

# FMLA- LAWFUL DISCHARGE

An employee is not immune from a discharge for lawful reasons simply because he has sought, or is currently taking an FMLA leave of absence. Rather, an employer can discharge an employee while he is on FMLA leave if it would have acted in the same manner if the employee has not been on FMLA leave.

The FMLA specifically provides than an employer may require its employees to keep in contact with it during the course of their FMLA leaves. The evidence here is that Verizon, as it is entitled to under the law, requires its employees to keep in reasonable contact with their supervisors during the course of their absences – including FMLA leaves. Verizon contends that it terminated Mr. Ward's employment because he failed to keep in touch with his supervisor, Mr. Shea, during the course of his absence in February and March of 2003. It is your task to decide, weighing all the evidence, whether Mr. Ward kept in touch with Mr. Shea during the course of his absence. If you believe that Mr. Ward did not keep in touch with Mr. Shea, and that Verizon terminated his employment based on that failure, you must render a verdict in favor of Verizon.


Authority:

Lewis v. Holsum of Fort Wayne, Inc., 278 F.3d 706 (7th Cir. 2002).

## **FMLA - RETALIATION**

If you find that Mr. Ward gave appropriate notice of his intent to exercise rights under the FMLA, and that he kept in touch with Mr. Shea during the course of his absence, you then may consider whether Mr. Shea knowingly lied to his manager and Human Resources by claiming that Mr. Ward did not keep him apprised of his medical situation, thus causing Mr. Ward's discharge, in retaliation for Mr. Ward's exercise of FMLA rights.  If you find that Mr. Shea's actions were motivated by any other purpose other than retaliation for Mr. Ward's exercise of FMLA rights – for example, because he was displeased with Mr. Ward's performance or disliked him personally – then you must rule in favor of Verizon.


Authority:

Hodgens v. General Dynamics Corp., 144 F.3d 151 (1st Cir. 1998).

## FMLA - DAMAGES

I will instruct you as to how to calculate damages if you find that Plaintiff has proven his claim by a preponderance of the evidence, but the fact that I am so instructing you should not be interpreted to mean that I believe that you should or should not find liability. I am giving these instructions only to assist you in the event you find for the Plaintiff.

If you find for Mr. Ward, you must determine an amount that will fairly compensate him for his actual damages. Such damages may include any backpay owed from the time of his termination on March 12, 2003 until a date no later than the date of your verdict. The FMLA limits a plaintiff's recovery to his actual monetary damages, meaning an amount equal to the amount of any wages, salary, employment benefits or other compensation denied or lost to him by reason of the violation. For example, you may not award any damages for any emotional distress that Mr. Ward may have suffered. Indeed, you must not award damages under this Instruction by way of punishment or through sympathy,

If you find that Mr. Ward would have been terminated by Verizon on some date prior to your verdict, you may not award backpay damages past that date. Defendants claim that Mr. Ward had been placed on a Performance Improvement Plan that ended on February 3, 2003 -- several weeks before his termination -- and that he would have been terminated in or about February or March of 2003 regardless of whether he had sought FMLA leave. If you find, based on a preponderance of the evidence, that Verizon has established that Mr. Ward would have been terminated for performance reasons prior to the date of trial, you may not award damages past the date on which you find he would have been terminated.

If you determine that Plaintiff is entitled to backpay damages, you must reduce these damages by what he earned at other jobs in wages, earnings, or other income and benefits, or which he obtained in unemployment compensation after his termination.

Authority:

Damages Instruction 1.3 and 2.1, and Federal Claims Instruction 2.2, Pattern Jury Instructions – Civil Cases, U.S. Eleventh Circuit District Judges Association (1990)' Devitt and Blackmar, Federal Jury Practice and Instructions, §§ 104.05 & 104.06; Rosania v. Taco Bell of America, Inc., 303 F. Supp. 2d 878 (N.D. Ohio 2004) (no emotional distress, punitive damages, or compensatory and consequential damages to FMLA plaintiff); Coleman v. Potomac Elec. Power Co., 281 F. Supp. 2d 250 (D.D.C. 2003); Walker v. United Parcel Service, Inc., 240 F.3d 1268 (10th Cir. 2001) (recovery under the FMLA is unambiguously limited to actual monetary losses); Szabo v. Trustees of Boston University, 198 WL 151272 (D. Mass. 1998), aff'd on other grounds, 181 F.3d 80 (1st Cir. 1998) (FMLA foes not provide for emotional distress damages).

## **MITIGATION OF DAMAGES**

A plaintiff who is injured has an obligation to take reasonable steps to minimize, or mitigate his damages.  Failures to mitigate damages can take a variety of forms, including not looking for new employment, finding new employment but voluntarily quitting, finding new employment and getting charged for misconduct, or voluntarily choosing to take a lesser paying job or return to school in the expectations that the employee will end up in a better position than if he continued to work for the employer.

During the backpay period, plaintiffs have an obligation to exercise "reasonable diligence" in finding alternative suitable employment.  Thus, awards of backpay may be offset by any wages that *could* have been earned with reasonable diligence after the illegal discharge, regardless of whether they were actually earned.  A victim of discrimination or retaliation is obligated to attempt to obtain a suitable job that is comparable to what he had been doing, and an employee's failure to do so because he has elected to change careers may constitute a failure to mitigate damages.  Thus, a victim of discrimination may, of course, choose not to pursue a comparable position to the one that he lost in order to go to school, or obtain training, in order to advance his personal career goals.  However, if you determine that with due diligence he could have obtained a higher paying job than he did, and that he chose to take a lower paying job, in the short run, in order to improve his career, you may choose to calculate backpay based on what you believe the Plaintiff could have been earning, rather than what he did earn for all or part of the backpay period.  If you find that Verizon has proven by a preponderance of the evidence that Mr. Ward failed to mitigate his damages, you must reduce any award of damages by the amount that could have been avoided.

Authority:

<u>Ford Motor Co. v. EEOC</u>, 458 U.S. 219, 231-32 (1982); <u>Johnson v. Spencer Press</u>, 3654 F.3d

368 (1st Cir. 2004); <u>Carey v. Mt. Desert Island Hosp.</u>, 156 F.3d 31, 41 (1st Cir. 1988); <u>Thorston v.</u>

<u>Gemini, Inc.,</u> 205 F.3d 370 (8th Cir. 2000) (upholding district court's decision to reduce FMLA

backpay award for failure to mitigate)

## FMLA - GOOD FAITH

If you find in favor of Plaintiff, then you also must decide whether Verizon acted in good faith.  If you find by a preponderance of the evidence that the ultimate decisionmakers at Verizon discharged Mr. Ward, because they honestly and reasonably believed, based on Mr. Shea's assurances, that Mr. Ward had failed to keep in contact with Mr. Shea during the course of his late-February to mid-March 2003 absence, then you must find that Verizon acted in good faith.


Authority:

Miller v. AT&T, 83 F. Supp. 2d 700 (S.D. W. Va. 2000), aff'd on other grounds, 250 F.3d 820 (4th Cir. 2001); Thorson v. Gemini, Inc., 205 F.3d 560 (8th Cir. 2000); Bachelder v. America West Airlines, Inc., 259 F.3d 1112 (9th Cir. 2001);

EXHIBIT B

## <u>PROPOSED VOIR DIRE QUESTIONS- EXHIBIT B</u>

1.  The Plaintiff in this case is Daniel P. Ward. Are you related to Mr. Ward? Do you know Mr. Ward? If so, please describe the circumstances. Do you know any of Mr. Ward's relatives? If so, please describe the circumstances.

2.  The Defendant in this case is Verizon. Have you ever been employed by Verizon or any of its predecessors (including New England Telephone, NYNEX or Bell Atlantic)? Was your experience positive or negative? Would your experience affect your ability to give either Plaintiff or Defendant here a fair and impartial trial?

3.  Have you ever had any disputes with Verizon or any of its predecessors? Would any such disputes affect your ability to give either Plaintiff or Defendant here a fair and impartial trial?

4.  Have you ever heard or do you have any knowledge of the facts or events in this case?

5.  Do you have any interest, financial or otherwise, in the outcome of this case?

6.  Do you have any personal opinions about Verizon, or its predecessors, that would impact your ability to objectively listen to the evidence and return an impartial verdict?

7.  Have you or any close family members ever been adversely affected by an employment decision?

8.  Have you or any close family members ever been fired from a job?

9.  Have you or any close family members been treated in an unfair manner by an employer?

10. Have you ever filed a grievance against an employer protesting what you considered to be unfair treatment by that employer?

11. Have you or any member of your immediate family ever filed a lawsuit against an employer?

12. Do you believe that if an employee brings a lawsuit against an employer, the employer must have done something wrong?

13. Do you believe that simply because a lawsuit has been filed there has to be a recovery of money?

14.    If you are chosen as a juror, do you know of any reason why you could not sit as an impartial juror on this case?

EXHIBIT C

## PROPOSED JURY VERDICT FORM - EXHIBIT C

1.  Do you find that the Plaintiff gave adequate and timely notice to
    Verizon and/or Michael Shea, prior to his termination on March 12, 2003, that he
    may be suffering from a serious health condition entitling him to leave under the
    Family and Medical Leave Act (FMLA)?

    YES_____    NO_____

    (If the answer is "yes," please answer Question No. 2.  If the answer is "no",
    skip to the signature line and return to the courtroom )

2.  Do you find that the Plaintiff reported to his supervisor, Michael Shea,
    as to his status and intent to return to work during the course of his late February
    through mid-March 2003 absence from work?

    YES_____    NO_____

    (If the answer is "yes," please answer Question No. 2.  If the answer is "no",
    skip to the signature line and return to the courtroom )

3.  Do you find that Michael Shea knowingly lied to his supervisor and Human
    Resources about the level of Plaintiff's contact with him during the course of
    Plaintiff's late February through mid-March 2003 absence from work in
    retaliation for Plaintiff's attempt to exercise rights under the FMLA and/or in an
    attempt to deprive Plaintiff from rights to which he might be entitled under the
    FMLA?

    YES_____    NO_____

    (If the answer is "yes," please answer Question No. 4.  If the answer is "no",
    skip to the signature line and return to the courtroom )

4.  Do you find that Verizon would have terminated Plaintiff at some point prior to
    the date of trial, even if Mr. Shea had reported that Plaintiff had kept in contact
    with him during the course of his late February through mid-March 2003 absence
    from work, based on his alleged failure to comply with the terms of the
    Performance Improvement Plan?

    YES_____    NO_____

    (If the answer is "yes," please write the date on which you find he would have
    been terminated in the line below and skip to Question No. 5.  If the answer is
    "no", leave the line below blank and skip to Question No. 5.)

    Date: _____

B3112808.1

5.      What is the dollar amount of wages, salary and employment benefits Plaintiff has proven by a preponderance of the evidence that he would have earned from Verizon through the date listed in your response to question 4 above or, if none is listed, the date of this verdict, minus the amount of earnings and benefits from other employment received by Plaintiff during that time?

_____ (in figures)

_____ (in words)

6.      Has Verizon proven by a preponderance of the evidence that Plaintiff failed to mitigate his damages?

YES_____ NO_____

(If the answer is "yes," please answer Question No. 7. If the answer is "no", skip to Question No. 8 )

7.      What is the dollar amount which should be subtracted from Plaintiff's damages to account for his failure to mitigate his damages?

_____ (in figures)

_____ (in words)

8.      Do you find that the ultimate decisionmakers at Verizon, discharged Plaintiff, because they honestly and reasonably believed, based on Mr. Shea's assurances, that Plaintiff had failed to keep in contact with Mr. Shea during the course of Plaintiff's late-February to mid-March 2003 absence?

YES_____ NO_____

**COMPLETE THE SIGNATURE AND DATE LINES AND RETURN TO THE COURTROOM.**

_____        _____
**Foreperson**                           **Date**